## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN WILLNER,<br>7 Old Orchard Lane<br>Mountaintop, PA 18707, | JURY TRIAL DEMANDED |
| | CIVIL ACTION |
| *Plaintiff* | CASE NO. 3:17-cv-01924-JFS |
| v. | |
| LUZERNE COUNTY,<br>200 North River St.<br>Wilkes-Barre, PA 18711 | **FIRST AMENDED COMPLAINT** |
| C.O. WUJACK,<br>*In his individual and official capacity*<br>99 Water St.<br>Wilkes-Barre, PA 18702 | |
| C.O. DELANEY,<br>*In his individual and official capacity*<br>99 Water St.<br>Wilkes-Barre, PA 18702 | |
| LIEUTENANT DOMAGAUER,<br>*In his individual and official capacity*<br>99 Water St.<br>Wilkes-Barre, PA 18702 | |
| CAPTAIN KEVIN J. GALLAGHER,<br>*In his individual and official capacity*<br>99 Water St.<br>Wilkes-Barre, PA 18702 | |
| WARDEN J. ALLEN NESBITT,<br>*In his individual and official capacity*<br>99 Water St.<br>Wilkes-Barre, PA 18702 | |

UNKNOWN INDIVIDUAL(S) IN THE
LUZERNE COUNTY
CORRECTIONAL FACILITY,
*In their individual and official capacity*
99 Water St.
Wilkes-Barre, PA 18702

WILKES-BARRE HOSPITAL
COMPANY, LLC D/B/A WILKES-
BARRE GENERAL HOSPITAL,
4000 Meridian Blvd.
Franklin, TN 37067

JEANNINE SAUNDERS,
575 N. River St.
Wilkes-Barre, PA 18701

DAVID GRASSO,
575 N. River St.
Wilkes-Barre, PA 18701

UNKNOWN INDIVIDUAL(S)
WORKING FOR, WITH, OR IN
WILKES-BARRE HOSPITAL
COMPANY, LLC D/B/A WILKES-
BARRE GENERAL HOSPITAL,
4000 Meridian Blvd.
Franklin, TN 37067

APOLLOMD D/B/A APOLLOMD
BUSINESS SERVICES, LLC D/B/A
APOLLOMD GROUP SERVICES,
LLC D/B/A APOLLOMD HOLDINGS,
LLC D/B/A APOLLOMD PHYSICIAN
PARTNERS, INC. D/B/A
APOLLOMD PHYSICIAN SERVICES
AL, LLC D/B/A APOLLOMD
PHYSICIAN SERVICES GA, LLC
D/B/A APOLLOMD PHYSICIAN
SERVICES NC, LLC D/B/A

APOLLOMD STATESBORO, LLC
D/B/A APOLLOMD, INC.,
5665 New Northside Dr., Ste. 200
Atlanta, GA 30328
         *Defendants*.

## FIRST AMENDED COMPLAINT

### I. INTRODUCTION

1.      "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987).

2.      This is an action for damages brought under 42 U.S.C. §§ 1983, 1988, the Fourth Amendment, the Fourteenth Amendment and for violations of Pennsylvania State law.

### II. JURISDICTION AND VENUE

3.      The foregoing paragraphs are incorporated herein by reference.

4.      This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, the Fourth Amendment, and the Fourteenth Amendment to the United States Constitution. Jurisdiction is based upon 28 U.S.C. § 1331 and the previously mentioned statutory and Constitutional provisions.

5.      Plaintiff invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear and decide claims under state law as the state law claims are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper under 28 U.S.C. § 1391 in this Court because the conduct complained of occurred here and at least one defendant resides here.

## III. **PARTIES**

7.      The foregoing paragraphs are incorporated herein by reference.

8.      Brian Willner ("Plaintiff") is an adult individual who is currently incarcerated at the Luzerne County Correctional Facility but normally resides at 7 Old Orchard Lane Mountaintop, Pennsylvania 18707.

9.      C.O. Wujack[1] ("Wujack") is, and was at all times relevant to this complaint, a corrections officer employed by Luzerne County and acting under color of state law. This suit is against Wujack in his personal and official capacity.

10.      C.O. Delaney[2] ("Delaney") is, and was at all times relevant to this complaint, a corrections officer employed by Luzerne County and acting under color of state law. This suit is against Delaney in his personal and official capacity.

---

[1] At this time, Plaintiff does not know Wujack's full name. Plaintiff will seek to amend to name Wujack fully and properly after identification is made during discovery.

[2] At this time, Plaintiff does not know Delaney's full name. Plaintiff will seek to amend to name Delaney fully and properly after identification is made during discovery.

11.     Lieutenant Domagauer[3] ("Domagauer") is, and was at all times relevant to this complaint, employed by Luzerne County, a Lieutenant at the Luzerne County Correction Facility ("LCCF"), and acting under color of state law. As such, he was the commanding officer for Wujack and Delaney and was responsible for Wujack's and Delaney's training, supervision, and conduct. He was also responsible by law for enforcing the regulations of LCCF and ensuring that Luzerne County corrections officers obey the laws of the Commonwealth of Pennsylvania and the United States. At all relevant times, Domagauer was acting in such capacity as the agent, servant, and employee of defendant Luzerne County. This suit is against Domagauer in his personal and official capacity.

12.     Captain Kevin J. Gallagher ("Gallagher") is, and was at all times relevant to this complaint, employed by Luzerne County, a Captain at the LCCF, and acting under color of state law. As such, he was the commanding officer for Wujack, Delaney, and Domagauer, and was responsible for Wujack's, Delaney's, and Domagauer's training, supervision, and conduct. He was also responsible by law for enforcing the regulations of the LCCF and ensuring that Luzerne County corrections officers obey the laws of the

---

[3] At this time, Plaintiff does not know Domagauer's full name. Plaintiff will seek to amend to name Domagauer fully and properly after identification is made during discovery.

Commonwealth of Pennsylvania and the United States. At all relevant times, Gallagher was acting in such capacity as the agent, servant, and employee of defendant Luzerne County. This suit is against Gallagher in his personal and official capacity.

13.     Warden J. Allen Nesbitt ("Nesbitt") was at all times relevant to this complaint, employed by Luzerne County and was in charge of the LCCF. Nesbitt was acting under color of state law at all relevant times. Nesbitt was the commanding officer for Wujack, Delaney, Domagauer, and Gallagher, and was responsible for their training, supervision, and conduct. He was also responsible by law for enforcing the regulations of the LCCF and ensuring that LCCF officers obeyed the laws of the Commonwealth of Pennsylvania and the United States. At all relevant times, Nesbitt was acting in such capacity as the agent, servant, and employee of defendant Luzerne County. This suit is against Nesbitt in his personal and official capacity.

14.     Nesbitt had policy making authority at LCCF and was otherwise in control of the functions, policies, procedures, and staff at LCCF at all relevant times hereto.

15.     The Unknown Individual(s) in the Luzerne County Correctional Facility ("Unknown Corrections Individuals") are, and at all relevant times were, employed by, working for, or working with Luzerne County and acting

6

under color of state law. This suit is against the Unknown Corrections Individuals in their individual and official capacities.[4]

16.     At all relevant times hereto, and in their actions and inactions, Defendants were acting alone and in concert under color of state law.

17.     At all relevant times hereto, Wujack, Delaney, Domagauer, Gallagher, Nesbitt, and Unknown Corrections Individuals were acting directly or indirectly on behalf of Luzerne County.

18.     At all times relevant hereto, Wujack, Delaney, Domagauer, Gallagher, Nesbitt, and the Unknown Corrections Individuals were acting in the course and scope of their agency, authority, and/or employment with Luzerne County and under color of state law.

19.     Luzerne County is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs, and controls the LCCF.

---

[4] Plaintiff is permitted to name "fictitious" individuals as stand-ins for real parties that he is unable to identify until discovery. *Scheetz v. Morning Call Inc.*, 130 F.R.D. 34, 36–37 (E.D. Pa. 1990) ("Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed.") (citing *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 31–32 (3d Cir.1985); *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174–75 (3d Cir.1977); *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir.1968); *Fludd v. United States Secret Service*, 102 F.R.D. 803, 805 (D.D.C.1984); *Lowenstein v. Rooney*, 401 F.Supp. 952, 960 (E.D.N.Y.1975); *Phillip v. Sam Finley, Inc.*, 270 F.Supp. 292, 294 (E.D.Va.1967)). Plaintiff intends to install the real parties after discovery permits their identification or, if the real parties are already installed, dismiss this party from this action.

20.     LCCF employed Wujack, Delaney, Domagauer, Gallagher, Nesbitt, and the Unknown Corrections Individuals at all times relevant hereto.

21.     Domagauer and Gallagher were the acting ranking corrections officers on duty during the time periods relevant to this complaint. Therefore, they were supervising or in charge of the conduct of their subordinates. This fact is evidenced by, among other things, their signatures appearing on the incident reports of their subordinate corrections officers.

22.     Wilkes-Barre Hospital Company, LLC d/b/a Wilkes-Barre General Hospital, ("General Hospital") is a limited liability company with a place of business at 4000 Meridian Boulevard, Franklin, Tennessee 37067.

23.     APOLLOMD D/B/A APOLLOMD BUSINESS SERVICES, LLC D/B/A APOLLOMD GROUP SERVICES, LLC D/B/A APOLLOMD HOLDINGS, LLC D/B/A APOLLOMD PHYSICIAN PARTNERS, INC. D/B/A APOLLOMD PHYSICIAN SERVICES AL, LLC D/B/A APOLLOMD PHYSICIAN SERVICES GA, LLC D/B/A APOLLOMD PHYSICIAN SERVICES NC, LLC D/B/A APOLLOMD STATESBORO, LLC D/B/A APOLLOMD, INC. ("ApolloMD") is a business and/or a conglomeration of businesses with a principal place of business located at 5665 New Northside Drive, Suite 200, Atlanta, Georgia 30328.

24.     Upon information and belief, ApolloMD provides, among other things, physicians to work in hospitals and otherwise provide patient care in various hospitals that contract with ApolloMD.

25.     Upon information and belief, ApolloMD provided Dr. Saunders and Dr. Grasso to work in, for, or with General Hospital.

26.     Jeannine Saunders ("Dr. Saunders") is a doctor and at all relevant times to this complaint was working for, with, in, or was otherwise employed by General Hospital and/or ApolloMD. Upon information and belief, Dr. Saunders was the doctor responsible for obtaining Plaintiff's informed consent prior to his sedation and subsequent surgical procedure described below. Upon information and belief, Dr. Saunders was hired to work in General Hospital through the services of and/or on behalf of ApolloMD.

27.     David Grasso ("Dr. Grasso") is a doctor and at all relevant times to this complaint was working for, with, in, or was otherwise employed by General Hospital and/or ApolloMD. Upon information and belief, Dr. Grasso was a doctor assisting Dr. Saunders and otherwise was responsible for obtaining Plaintiff's informed consent prior to his sedation and subsequent surgical procedure described below. Upon information and belief, Dr. Grasso

was hired to work in General Hospital through the services of and/or on behalf of ApolloMD.

28.     At all times relevant to this complaint, Dr. Saunders was an agent for General Hospital and/or ApolloMD and was acting in the course and scope of her agency, authority and/or employment with General Hospital and/or ApolloMD.

29.     At all times relevant to this complaint, Dr. Grasso was an agent for General Hospital and/or ApolloMD and was acting in the course and scope of his agency, authority and/or employment with General Hospital and/or ApolloMD.

30.     At all times relevant to this complaint, Dr. Saunders was acting under color of state law.

31.     At all times relevant to this complaint, Dr. Grasso was acting under color of state law.

32.     Dr. Saunders and Dr. Grasso were compelled by Wujack and Delaney, who were acting under color of state law, to perform the unconstitutional search and seizure in this case and therefore were acting under color of state law.

33.     Dr. Saunders and Dr. Grasso were acting under color of state law because her/his actions in sedating Plaintiff and conducting the

unconstitutional search and seizure of the object in Plaintiff's anal cavity has a sufficiently close nexus to the state actors' wishes and conduct that Dr. Saunders' and Dr. Grasso's actions should fairly be treated as action by the state.

34.     Dr. Saunders and Dr. Grasso were also willful participants in joint action with state actors since they performed the unconstitutional search and seizure with and at the behest of state actors including, but not limited to, Wujack and Delaney.

35.     The Unknown Individuals working for, with, or in General Hospital ("Unknown General Hospital Individuals") are and at all relevant times were employed by General Hospital. The Unknown General Hospital Individuals includes, but is not limited to, the unknown doctor(s) that performed the unconstitutional invasive medical procedure on Plaintiff without Plaintiff's consent.[5]

36.     At all relevant times hereto, the Unknown General Hospital Individuals were acting directly or indirectly on behalf of General Hospital.

37.     At all times relevant hereto, the Unknown General Hospital Individuals were acting in the course and scope of their agency, authority, and/or employment with General Hospital.

---

[5] *See* Footnote 4.

38.     General Hospital is vicariously liable for the actions of the Unknown General Hospital Individuals, Dr. Grasso, and Dr. Saunders.

39.     At all times relevant hereto, the Unknown General Hospital Individuals were acting under color of state law.

40.     The Unknown General Hospital Individuals were compelled by individuals acting under color of state law to perform the unconstitutional search and seizure in this case and therefore were acting under color of state law.

41.     General Hospital, Dr. Saunders, Dr. Grasso, ApolloMD, and the Unknown General Hospital Individuals were acting under color of state law because their actions in sedating Plaintiff and conducting the unconstitutional search and seizure of the object in Plaintiff's anal cavity has a sufficiently close nexus to the state actors' wishes and conduct that General Hospital, Dr. Saunders, Dr. Grasso, ApolloMD, and the Unknown General Hospital Individuals should fairly be treated as action by the state.

42.     General Hospital, Dr. Saunders, Dr. Grasso, ApolloMD, and the Unknown General Hospital Individuals were also willful participants in joint action with state actors since they performed the unconstitutional search and seizure with and at the behest of state actors.

43.     Defendants acted in concert when deciding to conduct the unconstitutional search and seizure.

44.     Additionally, upon information and belief, General Hospital, Dr. Saunders, Dr. Grasso, ApolloMD, and/or the Unknown General Hospital Individuals also profited as a result of acting in concert with the state actors and profited as a result of depriving Plaintiff of his constitutional rights in that they were paid for the medical services rendered to Plaintiff.

45.     Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff as set forth fully below.

## IV. **STATEMENT OF CLAIM**

46.     The foregoing paragraphs are incorporated herein by reference.

47.     On October 22, 2015, Plaintiff was transported to the LCCF by Luzerne County Adult Probation.

48.     Corrections officer Renfer ("Renfer") of LCCF, and other LCCF staff, conducted a strip search of Plaintiff when he arrived at LCCF. Renfer's incident report is attached to the complaint as Exhibit A.

49.     During the strip search, LCCF staff noticed part of an object protruding from Plaintiff's anal cavity.

50.     Plaintiff refused numerous commands from LCCF staff to remove the object from his anal cavity and turn it over. Exhibit A.

51.     Renfer and other LCCF staff then handcuffed and otherwise restrained Plaintiff. Exhibit A.

52.     Renfer and other LCCF staff then notified Domagauer about the above-described situation. Exhibit A.

53.     Domagauer then called the medical department at LCCF to request an X-Ray of Plaintiff's anal cavity. The incident report of Licensed Practical Nurse Catherine Lee demonstrating this fact is attached as Exhibit B.

54.     The medical department at LCCF informed Domagauer that it would be approximately two (2) hours until an X-Ray of Plaintiff's anal cavity could be completed. Exhibit B.

55.     Instead of waiting for the X-Ray to be completed, LCCF staff forced Plaintiff to go to General Hospital.

56.     Wujack and Delaney were the LCCF staff assigned to escort Plaintiff to General Hospital. The incident reports of Wujack and Delaney are attached as Exhibit C and Exhibit D, respectively.

57.     Upon information and belief, Dr. Saunders and Dr. Grasso assessed Plaintiff's condition and decided on the medical treatment Plaintiff would receive.

58.     Dr. Saunders was the attending physician to Plaintiff at all relevant times.

59.     Dr. Grasso was assisting Dr. Saunders with Plaintiff's medical care and otherwise providing medical care to Plaintiff.

60.     Dr. Saunders and/or Dr. Grasso first attempted to pull the object out of Plaintiff's rectum but was unsuccessful.

61.     Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals then gave Plaintiff one laxative. Exhibit C and D.

62.     After waiting roughly one hour, Plaintiff did not pass the object in his rectum so Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals administered a more powerful laxative to Plaintiff.

63.     Before Plaintiff was even finished drinking the more powerful laxative, Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals decided to sedate Plaintiff and surgically remove the object from his anal cavity.

64.     First Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals entered the room where Plaintiff was located with a speculum, which is a surgical tool.

65.     A speculum is a surgical tool.

66.     Plaintiff stated that he would not allow the speculum to be used on him.

67.     Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals then administered Ativan to Plaintiff.

68.     At this time, Wujack and Delaney were complaining about how long they had to wait at General Hospital for Plaintiff.

69.     Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals then told Plaintiff that he would be sedated to have the items removed from his anal cavity.

70.     Plaintiff asked Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals what would be used to sedate him.

71.     Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals responded that Propofol would be used to sedate him.

72.     Plaintiff stated that Propofol is the drug that killed Michael Jackson and that he did not want to be administered that drug.

73.     Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals responded by saying he did not need to worry about Michael Jackson dying from the drug and that they were using Propofol nonetheless.

74.     Plaintiff was sedated by General Hospital and/or ApolloMD staff, including but not limited to Dr. Saunders, Dr. Grasso, and the Unknown General Hospital Individuals. Exhibit C and D.

75.     Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals then surgically removed the object from Plaintiff's anal cavity. Exhibit C and D.

76.     Upon information and belief, Plaintiff never signed a consent form for the sedation or surgical procedure.

77.     Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals did not explain to Plaintiff the sedation or surgical procedure that was being conducted upon him. This includes the risks, benefits, or alternatives to the procedure.

78.     Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals otherwise treated Plaintiff in an uncourteous and meanspirited manner.

79.     Upon information and belief, Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals wanted Plaintiff out of their emergency room as soon as possible and did not explain the medical treatments conducted upon Plaintiff to him.

80.     General Hospital has Narcan or Naloxone on site.

81.     Narcan or Naloxone are used to reverse and otherwise treat heroin overdoses.

82.     Upon information and belief, Dr. Saunders, Dr. Grasso, and relevant medical personnel treating Plaintiff at General Hospital had access to Narcan, Naloxone, or a medical equivalent of these medications at all time relevant to this complaint.

83.     Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals did not wait long enough for Plaintiff to naturally pass the object in his anal cavity.

84.     No medical emergency existed when Plaintiff was sedated and subjected to the surgical procedure. This can be seen by, among other things, the fact that Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals waited for at least one hour for Plaintiff to naturally pass the object and the fact that Narcan or Naloxone was present, which could have reversed any heroin overdose Plaintiff might have suffered if the item in his anal cavity ruptured.

85.     Plaintiff was showing no symptoms of a heroin overdose.

86.     Plaintiff was showing no symptoms of a life-threatening situation.

87.     Plaintiff never gave voluntary consent for the surgical procedure or sedation.

88.     Upon information and belief, it was Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals' duty to obtain Plaintiff's informed consent before sedating him or subjecting him to the surgical procedure.

89.     Plaintiff was coerced and otherwise forced to undergo the surgical procedure by LCCF staff, including but not limited to Domagauer, Wujack, Delaney, Gallagher, and the Unknown Corrections Individuals.

90.     LCCF staff never attempted to obtain a search warrant prior to the surgical procedure.

91.     LCCF did not have Plaintiff's consent for the surgical procedure.

92.     According to the incident reports, Plaintiff was uncooperative with LCCF staff, refused to tell anyone what the object in his anal cavity was, and resisted LCCF staff to the point where he needed to be restrained. This activity demonstrates that Plaintiff did not want the object removed from his anal cavity and did not consent to the object being removed at any point. *See* Exhibit A, B, C, and D. The incident report of Licensed Practical Nurse Chris Gale is attached as Exhibit E, which demonstrates that Plaintiff refused to tell her what the object in his anal cavity was.

93.     On or about October 23, 2015, Plaintiff was sore and experiencing pain from the surgical procedure.

94.     Wujack then mocked and taunted Plaintiff for being violated during the surgical procedure.

95.     Domagauer also mocked and taunted Plaintiff by stating "I hope you have enough room for me in your ass."

96.     The actions or inactions of Domagauer, Wujack, Delaney, Gallagher, Nesbitt, the Unknown Corrections Individuals, General Hospital, Dr. Saunders, Dr. Grasso, ApolloMD, and the Unknown General Hospital Individuals were committed deliberately, intentionally, willfully, wantonly, and constitute conduct so egregious as to shock the conscience. This averment is supported by, among other things, the fact that Plaintiff's consent for the sedation and surgical procedure was not obtained, no warrant was obtained when defendants sought to search and seize evidence of a crime, the fact that an invasive surgical procedure was conducted upon Plaintiff to search for and seize evidence of a crime, Plaintiff was otherwise treated in an uncourteous and rude manner throughout the relevant time period, and Plaintiff was then mocked and taunted by LCCF staff about the illegal search and seizure.

*Count I – 42 U.S.C. § 1983 Illegal Search and Seizure Claim*

97.     The foregoing paragraphs are incorporated herein by reference.

98.     The Defendants in this case are persons within the meaning of 42 U.S.C. § 1983.

99.     At all relevant times, the Defendants were acting under color of law within the meaning of 42 U.S.C. § 1983.

100.    While acting under color of law, Defendants caused Plaintiff to be subjected to a deprivation of rights, liberties, and immunities secured by the Constitution. Namely, Defendants caused Plaintiff to be deprived of the rights, liberties, and immunities that he is granted under the Fourth Amendment, Fourteenth Amendment, and Pennsylvania's Constitution.

101.    A person, including a prisoner at a correctional facility, has a reasonable expectation of privacy in their bodies.[6]

---

[6] This should not be construed as Plaintiff admitting that he was an inmate or prisoner at LCCF. Plaintiff was being transported to LCCF for a probation violation and was not being incarcerated as the result of a conviction of any crime. Plaintiff also never even made it through the initial screening procedures at LCCF before the unconstitutional conduct occurred in this case.

Notably, 18 Pa.C.S. § 5123(e) defines an inmate as "[a] male or female offender who is committed to, under sentence to or confined in a penal or correctional institute." In this case, since Plaintiff never made it through the initial screening procedures, he was not committed to or confined in a correctional institute. Additionally, since he was taken to prison after being accused of a probation violation, he was not under sentence to a correctional institute. Therefore, Plaintiff was not an inmate and possessed all of the rights of a free citizen or, at the very least, possessed the rights of a pre-trial detainee.

102.     "A compelled surgical intrusion into an individual's body for evidence . . . implicates expectations of privacy and security of such magnitude that the intrusion may be 'unreasonable' even if likely to produce evidence of a crime." *Winston v. Lee*, 470 U.S. 753, 759 (1985).

103.     Plaintiff had a reasonable expectation of privacy in his body at all relevant times.

104.     Plaintiff had a subjective expectation of privacy in his body at all relevant times.

105.     Plaintiff had an objective expectation of privacy in his body at all relevant times.

106.     Sedating a person and surgically removing an object from their anal cavity without obtaining a search warrant is an unreasonable search and seizure.

107.     Defendants never obtained a search warrant.

108.     Defendants never attempted to obtain a search warrant.

109.     No valid exception to the warrant requirement applies in this case.

110.     Warrantless searches and seizures are *per se* unreasonable.

111.    It was the primary objective of the defendants to obtain evidence of a suspected crime when they conducted the warrantless search and seizure.

112.    It is the policy or custom of Luzerne County and LCCF to fail to train and supervise municipal employees on how to properly recognize when a search warrant is required and/or when a search warrant should be obtained.

113.    It is the policy or custom of Luzerne County and LCCF to fail to obtain a search warrant when one is required.

114.    It is the policy or custom of Luzerne County and LCCF to conduct unreasonable searches and seizures without a search warrant if suspected contraband is found in a body cavity of a person.

115.    It is the policy or custom of Luzerne County to conduct unconstitutional searches and seizures on inmates at LCCF.

116.    It was the policy or custom of Luzerne County to transport individuals to the hospital to have objects or items removed from an inmate's body.

117.    It was the policy or custom of Luzerne County to fail to properly train and supervise its employees on how to obtain a search warrant in situations where a bodily search was necessary.

118.     In this case, the need for more or different training regarding when a search warrant is required, when to obtain a search warrant, how to obtain a search warrant, and when a search and seizure is unreasonable and/or otherwise unconstitutional is obvious and the lack of this training is very likely to result in constitutional violations and, in fact, did result in constitutional violations in this case.

119.     Municipal policymakers for Luzerne County, including but not limited to, Nesbitt, knew that their employees, servants, or agents, specifically LCCF corrections officers, would confront situations where possible contraband is hidden within a person's body cavity and that search and seizure rights would be implicated.

120.     There is a history of municipal employees, such as LCCF corrections officers, mishandling searches and seizures, failing to obtain a search warrant when one is required, and otherwise conducting unreasonable searches and seizures in violation of the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution or making a difficult decision in determining whether a search of a person's body can be completed without a warrant. This averment is likely to have evidentiary support after a reasonable opportunity for discovery.

121.     If a municipal employee makes the wrong choice in the above-described situations, a deprivation of constitutional rights will result because an unreasonable search and seizure in violation of the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution will be conducted.

122.     Nesbitt, trained and/or supervised LCCF staff, including but not limited to Wujack, Delaney, Domagauer, Gallagher, and the Unknown Corrections Individuals, on the policies or customs described above.

123.     Domagauer trained and/or supervised LCCF staff, including but not limited to Wujack, Delaney, and the Unknown Corrections Individuals, on the policies or customs described above.

124.     Gallagher trained and/or supervised LCCF staff, including but not limited to Wujack, Delaney, Domagauer, and the Unknown Corrections Individuals, on the policies or customs described above.

125.     Because of the above-described policies and customs, Plaintiff suffered a deprivation of liberty under the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution through an unconstitutional search and seizure.

126.     Domagauer ratified the actions of his subordinates, including but not limited to Wujack, Delaney, and the Unknown Corrections Individuals, in this case by signing the incident reports and managing and/or making the

Case 3:17-cv-01924-JFS   Document 30   Filed 01/03/18   Page 26 of 41

decisions on how to proceed during the above described situation. Therefore, Domagauer must have been aware of the customs or policies established by his subordinates and adopted those customs or policies by ratifying their actions.

127.     Gallagher ratified the unconstitutional actions of his subordinates, including but not limited to Wujack, Delaney, Domagauer, and the Unknown Corrections Individuals, in this case by signing incident reports and managing and/or making decisions on how to proceed during the above described situation. Also, upon information and belief, Gallagher accepted the object removed from Plaintiff's anal cavity. Therefore, Gallagher must have been aware of the customs or policies established by his subordinates and adopted those customs or policies by ratifying their actions.

128.     It is the policy or custom of General Hospital to fail to train and supervise its employees on how to properly recognize when a search warrant is required and/or when a search warrant should be obtained.

129.     It is the policy or custom of General Hospital to fail to obtain a search warrant when one is required.

130.     It is the policy or custom of General Hospital to fail to train and supervise its employees on how to properly recognize when they are state

actors and thus, when they are required to consider a patient's constitutional rights before proceeding with medical treatment.

131.    It is the policy or custom of General Hospital to allow its employees and/or agents to conduct unreasonable searches and seizures without a search warrant if suspected contraband is found in a body cavity of a person.

132.    It is the policy or custom of General Hospital to allow its employees and/or agents to conduct unreasonable searches and seizures without a search warrant at the behest of state actors such as LCCF staff.

133.    It is the policy or custom of General Hospital to allow its employees and/or agents to treat inmates from LCCF and to remove objects or items from a LCCF inmate's body if necessary.

134.    In this case, the need for more or different training regarding when a search warrant is required, when to obtain a search warrant, how to obtain a search warrant, when medical personnel can be state actors, when a patient's constitutional rights are implicated, how to administer medical treatment without violating constitutional rights, and when a search and seizure is unreasonable and/or otherwise unconstitutional is obvious and the lack of this training is very likely to result in constitutional violations and, in fact, did result in constitutional violations in this case.

135.    Policymakers for General Hospital knew that their employees, servants, or agents would confront situations where an inmate was brought to General Hospital for medical treatment, including but not limited to medical treatment for contraband hidden inside the inmates body, and that the inmate's constitutional rights would be implicated.

136.    There is a history of General Hospital employees, such as Dr. Saunders and Dr. Grasso, mishandling searches and seizures, failing to obtain a search warrant when one is required, failing to obtain informed consent from LCCF inmates or other persons in custody of law enforcement prior to administering medical treatment, and otherwise conducting unreasonable searches and seizures in violation of the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution or making a difficult decision in determining whether a search of a person's body can be completed without a warrant. This averment is likely to have evidentiary support after a reasonable opportunity for discovery.

137.    If an employee of General Hospital makes the wrong choice in the above-described situations, a deprivation of constitutional rights will result because an unreasonable search and seizure in violation of the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution will be conducted.

138.     It is the policy or custom of ApolloMD to fail to train and supervise its employees on how to properly recognize when a search warrant is required and/or when a search warrant should be obtained.

139.     It is the policy or custom of ApolloMD to fail to obtain a search warrant when one is required.

140.     It is the policy or custom of ApolloMD to fail to train and supervise its employees on how to properly recognize when they are state actors and thus, when they are required to consider a patient's constitutional rights before proceeding with medical treatment.

141.     It is the policy or custom of ApolloMD to allow its employees and/or agents to conduct unreasonable searches and seizures without a search warrant if suspected contraband is found in a body cavity of a person.

142.     It is the policy or custom of ApolloMD to allow its employees and/or agents to conduct unreasonable searches and seizures without a search warrant at the behest of state actors such as LCCF staff.

143.     It is the policy or custom of ApolloMD to allow its employees and/or agents to treat inmates from LCCF, or similar facilities, and to remove objects or items from a LCCF inmate's body if necessary.

144.     In this case, the need for more or different training regarding when a search warrant is required, when to obtain a search warrant, how to

obtain a search warrant, when medical personnel can be state actors, when a patient's constitutional rights are implicated, how to administer medical treatment without violating constitutional rights, and when a search and seizure is unreasonable and/or otherwise unconstitutional is obvious and the lack of this training is very likely to result in constitutional violations and, in fact, did result in constitutional violations in this case.

145.    Policymakers for ApolloMD knew that their employees, servants, or agents would confront situations where an inmate from LCCF, or similar facility, was brought to a hospital that ApolloMD employees and/or agents provided medical treatment at for medical treatment, including but not limited to medical treatment for contraband hidden inside the inmates body, and that the inmates constitutional rights would be implicated.

146.    There is a history of ApolloMD employees, such as Dr. Saunders and Dr. Grasso, mishandling searches and seizures, failing to obtain a search warrant when one is required, failing to obtain informed consent from inmates or other persons in custody of law enforcement prior to administering medical treatment, and otherwise conducting unreasonable searches and seizures in violation of the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution or making a difficult decision in determining whether a search of a person's body can be completed without a warrant.

30

This averment is likely to have evidentiary support after a reasonable opportunity for discovery.

147.    If an employee and/or agent of ApolloMD makes the wrong choice in the above-described situations, a deprivation of constitutional rights will result because an unreasonable search and seizure in violation of the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution will be conducted.

148.    Because of the above-described policies and customs, Plaintiff suffered a deprivation of liberty under the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution through an unconstitutional search and seizure.

149.    As a result of the above-described events, Plaintiff incurred actual damages including, but not limited to, attorney's fees paid for his criminal defense, pain and suffering, embarrassment, humiliation, battery, loss of reputation, invasion of privacy, incarceration, and emotional distress.

150.    Pennsylvania's Constitution provides that the right to reputation is a fundamental right and cannot be infringed upon. *In re J.B.*, 107 A.3d 1, 16 (Pa. 2014) ("This Court has recognized that the right to reputation . . . is a fundamental right under the Pennsylvania Constitution.")(citing *R. v. Commonwealth, Dep't of Pub. Welfare*, 636 A.2d 142, 149 (Pa.

1994); *Hatchard v. Westinghouse Broadcasting Co.*, 532 A.2d 346, 351 (Pa. 1987); *Moyer v. Phillips*, 341 A.2d 441, 443 (1975); *Meas v. Johnson*, 39 A. 562, 563 (Pa. 1898)).

151.     Plaintiff's reputation has been damaged as a result of this unconstitutional search and seizure, the unconstitutional conspiracy, the actions, inactions, policies, customs, and other conduct of the Defendants.

152.     Specifically, Plaintiff's reputation was damaged by, among other things, the publication of the facts concerning Plaintiff's criminal case in records that are publicly available.

153.     At the time of the unreasonable and unconstitutional search and seizure, it was clearly established that a warrant was required to conduct an invasive medical procedure to obtain suspected contraband. Therefore, conducting the invasive procedure without a warrant would amount to a violation of Plaintiff's rights.

154.     A reasonable person would have realized that a warrant was required to conduct the invasive procedure to remove suspected contraband.

155.     A reasonable person would have realized that the invasive procedure to remove suspected contraband without first obtaining a warrant was an unreasonable and unconstitutional search and seizure.

     **WHEREFORE**, Plaintiff demands judgment against Defendants for

actual damages, punitive damages, costs, and attorney's fees.[7]

### Count II – 42 U.S.C. § 1983 Unconstitutional Conspiracy

156.    The foregoing paragraphs are incorporated herein by reference.

157.    The Defendants entered into a conspiratorial agreement prior to Plaintiff being subjected to the unconstitutional search and seizure described above.

158.    The agreement between the Defendants was to conduct the invasive medical procedure on Plaintiff to remove the suspected incriminating evidence from his anal cavity even though no search warrant was obtained.

159.    Defendants also agreed to conduct the surgical procedure on Plaintiff to remove the suspected incriminating evidence from his anal cavity even though no valid exception to the warrant requirement applied.

160.    This conspiracy began at General Hospital on October 22, 2015 before Plaintiff was subjected to the invasive medical procedure and ended after General Hospital, Dr. Saunders, Dr. Grasso, and/or the Unknown

---

[7] Plaintiff only asserts the punitive damages claims against Wujack, Delaney, Domagauer, Gallagher, Nesbitt, and the Unknown Corrections Individuals in their individual capacity and against General Hospital, ApolloMD, Dr. Saunders, Dr. Grasso, and the Unknown General Hospital Individuals. Plaintiff does not assert the punitive damages claim against Luzerne County since punitive damages cannot be obtained when a lawsuit under 42 U.S.C. § 1983 is brought against an individual in their official capacity.

General Hospital Individuals handed the suspected incriminating evidence removed from Plaintiff's anal cavity over to LCCF staff.

161.    The purpose of the unconstitutional conspiracy was to remove the suspected incriminating evidence from Plaintiff's anal cavity.

162.    The goal of the unconstitutional conspiracy was also to conduct the surgical procedure to remove the suspected incriminating evidence from Plaintiff's anal cavity without a search warrant or any valid exception to the warrant requirement.

163.    The Unknown General Hospital Individuals, Dr. Saunders, Dr. Grasso, Wujack, and Delaney took action to achieve the purpose of this unconstitutional conspiracy by sedating and then subjecting Plaintiff to the surgical procedure to remove the unknown object from his anal cavity.

164.    Wujack, Delaney, Dr. Saunders, Dr. Grasso, and the Unknown General Hospital Individuals took action to achieve the purpose of this unconstitutional conspiracy by forcing or otherwise coercing Plaintiff to undergo sedation and the surgical procedure.

165.    Wujack, Delaney, Dr. Saunders, Dr. Grasso, and the Unknown General Hospital Individuals took action to achieve the goal of this unconstitutional conspiracy by sedating and conducting a surgical procedure on Plaintiff without his voluntary consent or informed consent.

166.     Wujack, Delaney, Dr. Saunders, Dr. Grasso, and the Unknown General Hospital Individuals took action to achieve the goal of this unconstitutional conspiracy by failing to wait long enough for Plaintiff to pass the unknown object on his own.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, costs, attorney's fees, and punitive damages.[8]

*Count III – Medical Battery*

167.     The foregoing paragraphs are incorporated herein by reference.

168.     A physician must obtain the informed consent of a patient prior to conducting a medical procedure.

169.     Surgical or medical procedures amount to a battery if they are not consented to.

170.     As described above, Plaintiff did not provide voluntary consent for the medical procedures performed on him at General Hospital by Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals.

171.     Additionally, Dr. Saunders, Dr. Grasso, and the Unknown General Hospital Individuals did not properly advise Plaintiff regarding the nature of the medical procedures to be performed, the seriousness of the

---

[8] *See* Footnote 7.

procedures, the possible results, the possible side effects, the risks involved, and alternatives to the procedures. This list is non-exhaustive.

172.     General Hospital, ApolloMD, Dr. Saunders, Dr. Grasso, and the Unknown General Hospital Individuals therefore did not have Plaintiff's informed consent to perform the procedures.

173.     Upon information and belief, Dr. Saunders had a duty to obtain Plaintiff's informed consent before sedating him or otherwise subjecting him to the surgical procedure described above.

174.     Dr. Saunders did not obtain Plaintiff's informed consent.

175.     Dr. Grasso also had a duty to obtain Plaintiff's informed consent before sedating him or otherwise subjecting him to the surgical procedure described above.

176.     Dr. Grasso did not obtain Plaintiff's informed consent.

177.     Plaintiff did not give his consent to be sedated or to have the surgical procedure performed upon him.

178.     Plaintiff did not give his informed consent to be sedated or to have the surgical procedure performed upon him.

179.     Lack of informed consent is the equivalent of no consent.

180.    A lack of informed consent and/or a lack of consent claim is cognizable even if the underlying medical procedure was performed properly and the overall result is beneficial to the patient.

181.    Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals made physical contact or otherwise touched Plaintiff during the above-described procedures.

182.    No physical injury is required to pursue a claim of medical battery. Mere unconsented touching is enough.

183.    The touching in this case was done by Dr. Saunders, Dr. Grasso, and/or the Unknown General Hospital Individuals without Plaintiff's voluntary consent.

184.    The touching in this case was done by Dr. Saunders, Dr. Grasso, and the Unknown General Hospital Individuals without Plaintiff's informed consent.

185.    General Hospital failed to adhere to the proper standard of care it owed to Plaintiff in that it failed to obtain his consent before subjecting him to sedation and a surgical procedure.

186.    General Hospital also failed to adhere to the proper standard of care it owed Plaintiff by failing to employ and retain only competent physicians since it employed and retained Dr. Saunders, Dr. Grasso, and/or

ApolloMD who failed to obtain Plaintiff's consent before subjecting him to sedation and a surgical procedure.

187.     General Hospital failed to adhere to the proper standard of care it owed Plaintiff by failing to oversee all persons who practice medicine within its walls. General Hospital failed to oversee Dr. Saunders and Dr. Grasso and failed to ensure she/he obtained Plaintiff's informed consent prior to his sedation and surgical procedure.

188.     General Hospital failed to adhere to the proper standard of care it owed Plaintiff by failing to formulate, adopt and enforce adequate rules and policies to enforce quality care for patients.

189.     General Hospital failed to formulate, adopt, and enforce adequate rules and policies with regard to obtaining informed consent from patients. This averment is supported by the fact that Dr. Saunders and Dr. Grasso, employees at General Hospital and/or employees for the company hired by General Hospital to provide physicians for its emergency room, failed to obtain Plaintiff's informed consent before sedating him and subjecting him to a surgical procedure.

190.     ApolloMD failed to adhere to the proper standard of care it owed to Plaintiff in that it failed to obtain his consent before subjecting him to sedation and a surgical procedure.

191.     ApolloMD also failed to adhere to the proper standard of care it owed Plaintiff by failing to employ and retain only competent physicians since it employed and retained Dr. Saunders and Dr. Grasso who failed to obtain Plaintiff's consent before subjecting him to sedation and a surgical procedure.

192.     ApolloMD failed to adhere to the proper standard of care it owed Plaintiff by failing to oversee all persons who practice medicine within its business. ApolloMD failed to oversee Dr. Saunders and Dr. Grasso and failed to ensure she/he obtained Plaintiff's informed consent prior to his sedation and surgical procedure.

193.     ApolloMD failed to adhere to the proper standard of care it owed Plaintiff by failing to formulate, adopt and enforce adequate rules and policies to enforce quality care for patients.

194.     ApolloMD failed to formulate, adopt, and enforce adequate rules and policies with regard to obtaining informed consent from patients. This averment is supported by the fact that Dr. Saunders and Dr. Grasso, employees of ApolloMD, failed to obtain Plaintiff's informed consent before sedating him and subjecting him to a surgical procedure.

195.     As a result of the above-described contact, Plaintiff suffered actual damages in the form of embarrassment, humiliation, emotional distress, discomfort, pain, incarceration, battery, and suffering.

**WHEREFORE**, Plaintiff demands judgment against General Hospital, ApolloMD, Dr. Saunders, Dr. Grasso, and the Unknown General Hospital Individuals for damages.

## V. <u>DEMAND FOR JURY TRIAL</u>

196.     The foregoing paragraphs are incorporated herein by reference.

197.     Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants for

     a. Actual damages;

     b. Punitive damages;

     c. Attorney's fees;

     d. Costs;

     e. Interest; and

     f. Any further relief that the Court deems just and proper.

Respectfully Submitted,

*s/ Leonard Gryskewicz, Jr.*
Leonard Gryskewicz, Jr.
Attorney for Plaintiff
PA321467

Lampman Law
2 Public Sq.
Wilkes-Barre, PA 18701
Phone: (570) 371-3737
Fax: (570) 371-3838
lenny@lampmanlaw.com