## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN WILLNER, <br>       *Plaintiff* <br><br> v. <br><br> LUZERNE COUNTY, C.O. WUJACK, C.O. DELANEY, LIEUTENANT DOMAGAUER, CAPTAIN KEVIN J. GALLAGHER, WARDEN J. ALLEN NESBITT, UNKNOWN INDIVIDUAL(S) IN THE LUZERNE COUNTY CORRECTIONAL FACILITY, WILKES-BARRE HOSPITAL COMPANY, LLC D/B/A WILKES-BARRE GENERAL HOSPITAL, JEANNINE SAUNDERS, DAVID GRASSO, UNKNOWN INDIVIDUAL(S) WORKING FOR, WITH, OR IN WILKES-BARRE HOSPITAL COMPANY, LLC D/B/A WILKES-BARRE GENERAL HOSPITAL, APOLLOMD D/B/A APOLLOMD BUSINESS SERVICES, LLC D/B/A APOLLOMD GROUP SERVICES, LLC D/B/A APOLLOMD HOLDINGS, LLC D/B/A APOLLOMD PHYSICIAN PARTNERS, INC. D/B/A APOLLOMD PHYSICIAN SERVICES AL, LLC D/B/A APOLLOMD PHYSICIAN SERVICES GA, LLC D/B/A APOLLOMD PHYSICIAN SERVICES NC, LLC D/B/A APOLLOMD STATESBORO, LLC D/B/A APOLLOMD, INC., <br>       *Defendants*. | JURY TRIAL DEMANDED <br><br> CIVIL ACTION <br><br> CASE NO. 3:17-cv-01924-JFS |

i

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT WILKES-BARRE HOSPITAL COMPANY, LLC D/B/A WILKES-BARRE GENERAL HOSPITAL'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................. iii

TABLE OF AUTHORITIES ........................................................................... iv

**I. Introduction** .......................................................................................1

**II. Procedural History and Statement of Facts** .....................................1

**III. Questions Presented** ........................................................................3

**IV. Argument** .........................................................................................4

   A.  Supplemental Jurisdiction ...................................................................5

   B.  State Actors .........................................................................................9

   C.  No Medical Emergency Existed ........................................................13

   D.  Unknown Individuals .........................................................................15

   E.  Punitive Damages ............................................................................17

**V. Conclusion** ......................................................................................21

**CERTIFICATION OF COUNSEL** ..........................................................21

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998) ......................................... 10

Abels v. State Farm Fire & Cas. Co., 770 F.2d 26 (3d Cir.1985) .............. 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ....................................................... 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................. 4

*Bennis v. Gable*, 823 F.2d 723 (3d Cir. 1987) ........................................... 17

*Best v. County of Northumberland*, 2012 WL 3562329 (M.D. Pa. Jun. 29, 2012) ...................................................................................................... 18

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ........................................................ 9

Bufalino v. Michigan Bell Tel. Co., 404 F.2d 1023 (6th Cir.1968) .............. 16

*Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961) ........................... 9

*Cochetti v. Desmond*, 572 F.2d 102 (3d Cir. 1978) .................................... 18

*D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364 (3d Cir. 1992) ...................................................................................................... 10

*Dennis v. Sparks*, 449 U.S. 24 (1980) ................................................. 10, 11

Fludd v. United States Secret Service, 102 F.R.D. 803 (D.D.C.1984) ....... 16

*Great Western Mining & Mineral Co., v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010) ..................................................................................... 10, 11

*Grier v. Klem*, 591 F.3d 672 (3d Cir. 2010). ........................................... 7, 8

*HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185 (3d Cir. 1996) ..............................................................................................5

*Heck v. Humphrey*, 512 U.S. 477 (1994). ...........................................7, 8, 9

*In re Duran*, 769 A.2d 497 (Pa. Super. 2001)............................................14

*Jackman v. Smith*, 190 Fed.Appx. 108 (3d Cir. 2006). .................................8

*Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974)...................................10

*Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir. 1992)...............17, 18

Lowenstein v. Rooney, 401 F.Supp. 952 (E.D.N.Y.1975) .........................16

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) .....................................9

*Martin v. Lakewood Police Dep't*, 266 Fed.Appx. 173 (3d Cir. 2008) ........10

*McSorley v. Deger*, 905 A.2d 524 (Pa. Super. 2006) .................................14

*Mitchell v. City of Philadelphia*, 344 Fed.Appx. 775 (3d Cir. 2009)............17

Phillip v. Sam Finley, Inc., 270 F.Supp. 292 (E.D.Va.1967) ......................16

*Pugh v. Downs*, 641 F.Supp.2d 468 (E.D.Pa. 2009) ...................................9

*Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989)..............................................11

*Scheetz v. Morning Call Inc.*, 130 F.R.D. 34 (E.D. Pa. 1990) ....................16

*Sinclair v. Soniform, Inc.*, 935 F.2d 599 (3d Cir. 1991)................................5

*Smith v. Yohe*, 194 A.2d 167 (Pa. 1963)...................................................14

*Terry v. Adams*, 345 U.S. 461 (1953)..........................................................9

*Thompson v. Nason Hosp.*, 527 Pa. 330 (Pa. 1991). ...........................19, 20

v

*Union Pacific Railway Co. v. Botsford*, 141 U.S. 250 (1891) .....................14

Varlack v. SWC Caribbean, Inc., 550 F.2d 171 (3d Cir.1977) ...................16

*Winston v. Lee*, 470 U.S. 753 (1985). ......................................................19

**Statutes**

28 U.S.C. § 1331 ...................................................................................6

28 U.S.C. § 1367. .............................................................................5, 6

42 U.S.C. § 1983 ...................................................................................6

42 U.S.C. § 1988 ...................................................................................6

# I. <u>Introduction</u>

Plaintiff, by and through his counsel, Leonard Gryskewicz, Jr., hereby files his Brief in Opposition to Defendant Wilkes-Barre Hospital Company, LLC d/b/a Wilkes-Barre, General Hospital's Motion to Dismiss and hereby states as follows:

# II. <u>Procedural History and Statement of Facts</u>

Plaintiff filed a complaint on October 20, 2017 that alleged claims against the Defendants for an unconstitutional search and seizure, unconstitutional conspiracy, and for violating Plaintiff's rights under the Pennsylvania Constitution. (Doc. 1; Doc. 30).  Plaintiff also brings a claim against Wilkes-Barre Hospital Company, LLC d/b/a Wilkes-Barre General Hospital (the "Hospital") and unknown individual(s) working for, with, or in the Hospital (the "Unknown Hospital Staff") for medical battery. (Doc. 30). Thereafter, on January 23, 2018, the Hospital and Unknown Hospital Staff filed a motion to dismiss to Plaintiff's Amended Complaint and a brief in support of its motion to dismiss. (Doc. 33). Plaintiff now files his Brief in Opposition to the Hospital's Motion to Dismiss.

On October 22, 2015, Plaintiff was transported to the Luzerne County Correctional Facility ("LCCF") by Luzerne County Adult Probation. (Doc. 30, ¶ 47). Plaintiff was stripped searched at LCCF by C.O. Renfer ("Renfer") and

1

other LCCF staff. (Doc. 30, ¶ 48). LCCF staff noticed part of an object protruding from Plaintiff's anal cavity during this strip search. (Doc. 30, ¶ 49). LCCF staff ordered Plaintiff to remove the object. (Doc. 30, ¶ 50). Plaintiff was handcuffed and restrained while Renfer and other LCCF staff notified Domagauer, who was the supervisor at the time. (Doc. 30, ¶¶ 51–52). Plaintiff refused commands from LCCF staff to remove the object from his anal cavity. (Doc. 30, ¶ 50). Instead of waiting to conduct an X-Ray on Plaintiff at LCCF, LCCF staff forced Plaintiff to go to Wilkes-Barre Hospital Company, LLC d/b/a Wilkes-Barre General Hospital (the "Hospital"). (Doc. 30, ¶¶ 53–55).

Defendants Wujack and Delaney were assigned to escort Plaintiff to the Hospital to collect evidence. (Doc. 30, ¶ 56). At the Hospital, Plaintiff was first given a laxative and was forced to wait for the laxative to work (Doc. 30, ¶ 61). Plaintiff was then sedated by the Hospital's staff and then the object in his anal cavity was surgically removed. (Doc. 30, ¶¶ 61–75). Plaintiff never provided voluntary consent for the surgical procedure or sedation. (Doc. 30, ¶¶ 76–79, 89). A search warrant was never obtained at any relevant point. (Doc. 30, ¶ 90). Plaintiff was coerced and/or forced to undergo this surgical procedure by the LCCF Defendants and/or the General Hospital Defendants even though no warrant was obtained and no exigency existed. (Doc. 30).

Plaintiff also alleges that the Defendants entered into an unconstitutional conspiracy to conduct the above-described unconstitutional search and seizure. (Doc. 30, ¶¶ 156–166). Defendants entered into an agreement to conduct the illegal surgical procedure on Plaintiff without obtaining a search warrant. (Doc. 30, ¶¶ 156–166). This unconstitutional conspiracy began on October 22, 2015 at General Hospital prior to Plaintiff undergoing the surgical procedure and ended when the Hospital's staff handed the evidence seized during the surgical procedure over to LCCF staff. (Doc. 30, ¶¶ 156–166). The purpose of this criminal conspiracy was to obtain evidence of a crime by illegally seizing an object in Plaintiff's anal cavity by using a surgical procedure. (Doc. 30, ¶¶ 156–166).

### III. <u>Questions Presented</u>

1. Whether this Court should exercise supplemental jurisdiction over the state law claims raised by Plaintiff?

   **Suggested Answer: Yes.**

2. Whether Plaintiff has alleged sufficient facts to demonstrate that the Hospital and Unknown Hospital Staff were state actors in order to state a claim against the Hospital and Unknown Hospital Staff under 42 U.S.C. § 1983?

   **Suggested Answer: Yes.**

**3.** Whether Defendant's motion to dismiss the medical battery claim, based on their argument that a medical emergency negated the requirement for informed consent, should be denied?

**Suggested Answer: Yes.**

4. Whether Plaintiff can maintain this action against the Unknown Hospital Staff and amend his complaint after discovering the identity of these individuals?

**Suggested Answer: Yes.**

5. Whether Plaintiff has stated a cognizable claim for punitive damages?

**Suggested Answer: Yes.**

6. Whether Plaintiff has stated a cognizable claim for corporate liability?

**Suggested Answer: Yes.**

## IV. <u>Argument</u>

Federal Rule of Civil Procedure 8 provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Essentially, the complaint must provide the Defendants with fair notice of the claims brought against them. *Id.* When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all factual allegations in the

complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Plaintiff need not plead detailed factual allegations to survive a motion to dismiss; a Plaintiff must merely state a claim to relief that is plausible on its face. *Id.*

A.  Supplemental Jurisdiction

If a district court has original jurisdiction over an action, the district court also has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims are considered part of the same case or controversy "if they share significant factual elements" or if they are part of a common nucleus of operative fact." *HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1198 (3d Cir. 1996) (citing *Sinclair v. Soniform, Inc.*, 935 F.2d 599, 603 (3d Cir. 1991)). A district court may decline to exercise supplemental jurisdiction over a claim if: "(1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

In this case, the Court has original jurisdiction under 28 U.S.C. § 1331

over Plaintiff's federal civil rights claims as those claims arise under the Constitution of the United States and under 42 U.S.C. §§ 1983 and 1988. *See* 28 U.S.C. § 1331; (Doc. 1, ¶¶ 2–4). Therefore, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the remaining claims brought by Plaintiff if those claims are so related to the federal civil rights claims that they form part of the same case or controversy under Article III. *See* 28 U.S.C. § 1367(a). In this case, Plaintiff's medical battery claim arises out of the same set of facts as the federal civil rights claims. The medical battery claim is based on the exact same factual scenario as the unconstitutional search and seizure in this case. In fact, even the legal elements overlap somewhat in that Plaintiff alleges that the Hospital and the Unknown Hospital Staff conducted the surgical procedure without Plaintiff's consent; consent is an element of the medical battery claim and an exception to the warrant requirement. Therefore, this Court should exercise supplemental jurisdiction over all of Plaintiff's state law claims.

None of the four exceptions to the Court exercising supplemental jurisdiction apply in this case. The state law claims do not raise novel or complex issues of state law. The federal civil rights claims predominate over all other claims in this lawsuit. The Court has not dismissed all claims that original jurisdiction is based upon. And, there are no exceptional

circumstances that would compel this Court to deny supplemental jurisdiction. Therefore, the Court should exercise supplemental jurisdiction over all of Plaintiff's state law claims.

The Hospital Defendants and Unknown Hospital Staff also claim that this Court should dismiss Plaintiff's complaint because there is a suppression hearing in the criminal case, which arose out of the general facts of this case, scheduled in the Luzerne County Court of Common Pleas. Defendants assert that if the Luzerne County Court denies suppression or otherwise finds the search and seizure in this case constitutional, that this case must be dismissed for lack of subject matter jurisdiction. However, applicable precedent on this issue requires a different result.

In *Heck v. Humphrey*, the Supreme Court held that a person does not have a cognizable section 1983 claim for alleged unconstitutional conduct that would invalidate his underlying conviction or sentence unless that conviction or sentence had already been called into question. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). This rule is designed to prevent prisoners from collaterally attacking their convictions either directly or indirectly through section 1983 lawsuits. *Grier v. Klem*, 591 F.3d 672, 677 (3d Cir. 2010). The Court must look to the following test to determine if any ruling in this case would invalidate any conviction or sentence Defendant has

7

received in his underlying criminal case:

> [A] district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 677 (quoting *Heck*, 512 U.S. at 487).

In this case, there is simply no conviction or sentence that the Court could invalidate with any ruling. Therefore, Defendants' contention is not ripe for the Court's consideration. Moreover, even if the Luzerne County Court holds that the search and seizure in the underlying criminal case was constitutional or that suppression is not the proper remedy, that does not lead to the conclusion that Plaintiff's claims must be dismissed. *See Jackman v. Smith*, 190 Fed.Appx. 108, 109–110 (3d Cir. 2006). Indeed, the Supreme Court itself in *Heck* stated the following:

> a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.

*Heck*, 512 U.S. at 487 n.7. Therefore, even if Plaintiff does not prevail at the suppression hearing in state court, that does not lead to the conclusion that this case must be dismissed.

B. <u>State Actors</u>

Courts use four tests to determine if a private party is a state actor: (1) "there is a sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may fairly be treated as that of the state itself";[1] (2) "'the state has so far insinuated itself into a position of interdependence' with a private party that 'it must be recognized as a joint participant in the challenged activity'";[2] (3) "where a private party is a 'willful participant in joint action with the State or its agents'";[3] and (4) "where the private party has been 'delegated . . . a power traditionally exclusively reserved to the State.'"[4] *Pugh v. Downs*, 641 F.Supp.2d 468, 472 (E.D.Pa. 2009) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Terry v. Adams*, 345 U.S. 461, 468–70 (1953)). "Although not an agent of the state, a private party who willfully

---

[1] The close nexus test.
[2] The symbiotic relationship test.
[3] The joint action test.
[4] The public function test.

participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." *Abbott v. Latshaw*, 164 F.3d 141, 147–48 (3d Cir. 1998) (citing *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)). Additionally, "'[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.'" *Martin v. Lakewood Police Dep't*, 266 Fed.Appx. 173, 176 (3d Cir. 2008) (quoting *Dennis*, 449 U.S. at 27–28). However, the private persons must have been willful participants in the joint action with the state or its agents. *Id.* The Court must inquire as to "whether there is a sufficiently close nexus between the state and the challenged action of the . . . entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

In order to establish a conspiracy under section 1983, a person must plead "facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co., v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citing *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992)). Post *Twombly* and *Iqbal*, the Third Circuit has held that the *Great Western Mining & Mineral Co.* holding is still good law and that a plaintiff need only plead "plausible grounds to infer an agreement"

to establish an unconstitutional conspiracy. *Id.* The Third Circuit has said that particularized allegations of a conspiracy include allegations "addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).

In *Dennis*, a state court prevented the plaintiffs from producing subsurface materials from certain oil leases. *Dennis*, 449 U.S. at 25. After a state appellate court held the injunction to be illegal, the plaintiff brought a section 1983 claim against a private entity. *Id.* at 25–26. The plaintiff in the section 1983 action alleged that "the injunction had been corruptly issued as the result of a conspiracy between the judge and other defendants, thus causing a deprivation of property . . . without due process of law." *Id.* at 26. The plaintiff also alleged that the private entity the section 1983 claim was brought against had bribed the state court judge, which caused the court to issue the injunction. *Id.* at 28. The Supreme Court held that these allegations were enough to state a plausible claim for an unconstitutional conspiracy. *Id.* at 29.

In this case, Plaintiff has alleged the following: (1) that a conspiratorial agreement among the Defendants existed prior to the surgical procedure performed on October 22, 2015; (2) the conspiratorial agreement was to

remove the suspected incriminating evidence from Plaintiff's anal cavity by any means necessary, including by unconstitutional means;[5] (3) Defendants agreed to conduct the surgical procedure on Plaintiff to remove the suspected incriminating evidence; (4) that the conspiracy began at the Hospital on October 22, 2015 before Plaintiff underwent the surgical procedure; (5) the conspiracy ended when the Hospital and the Unknown Hospital Staff turned the items recovered from the surgical procedure over to LCCF staff; (6) the purpose and/or goal of the conspiratorial agreement was to conduct the illegal surgical procedure to remove suspected incriminating evidence from Plaintiff's anal cavity without a warrant or a valid exception to the warrant requirement; (7) the Unknown Hospital Staff, C.O. Wujack, and C.O. Delaney—all Defendants in this action—took overt action to achieve the purpose of this unconstitutional conspiracy by sedating and then subjecting Plaintiff to the surgical procedure without a warrant, Plaintiff's consent, or any valid exception to the warrant requirement; (8) the Unknown Hospital Staff, C.O. Wujack, and C.O. Delaney also took action to achieve the goal of their conspiracy by forcing or otherwise coercing Plaintiff to

---

[5] This fact is further evidenced by the illegal search and seizure (i.e. the surgical procedure) that took place. Notably, the Hospital and the Unknown Hospital Staff conducted the surgical procedure in furtherance of this conspiracy.

undergo sedation and the surgical procedure; and (9) Defendants failed to wait long enough for the laxatives to properly work and, instead, subjected Plaintiff to sedation and a surgical procedure without his consent. (Doc. 30, ¶¶ 97–166).

The surgical procedure in this case is similar to the bribe in *Dennis*. In this case, Plaintiff can establish that the surgical procedure occurred, incriminating evidence was removed by the Hospital and Unknown Hospital Staff, and that the Hospital and/or Unknown Hospital Staff then gave the evidence to the corrections officers. Since Plaintiff can establish those acts, the Court can infer the existence of a conspiracy. These facts, combined with the above-described allegations that state with particularity the period of the conspiracy, the object of the conspiracy, and the actions of certain actors to achieve the goals of that conspiracy, are enough to survive a motion to dismiss. Therefore, this Court should deny Plaintiff's motion to dismiss since Plaintiff has stated a plausible claim that the Hospital and the Unidentified Hospital Staff were state actors.

C. No Medical Emergency Existed

If a patient is "'mentally and physically able to consult about his condition, in the absence of an emergency, the consent of the patient is a prerequisite to a surgical operation by his physician and an operation without

the patient's consent is a technical'" battery. *McSorley v. Deger*, 905 A.2d 524, 528 (Pa. Super. 2006) (quoting *Smith v. Yohe*, 194 A.2d 167 (Pa. 1963)). "The right to refuse medical treatment is deeply rooted in our common law." *In re Duran*, 769 A.2d 497, 503 (Pa. Super. 2001). Indeed, the Supreme Court, more than one-hundred years ago, recognized that "'no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person.'" *Id.* (quoting *Union Pacific Railway Co. v. Botsford*, 141 U.S. 250, 251 (1891)). This right to personal autonomy spawned the doctrine of informed consent and medical battery. *Id.*

In this case, there was simply no medical emergency, as Plaintiff alleged in the complaint. (Doc. 30, ¶ 84).[6] The facts of this case demonstrate that no emergency existed. First, LCCF staff were originally going to conduct an X-Ray on Plaintiff at LCCF but changed their mind when the wait for the X-Ray machine was roughly two hours. (Doc. 30, ¶¶ 53–45). Plaintiff was also examined by the medical staff at LCCF. (Doc. 30, ¶ 53). The LCCF

---

[6] Exigency is a valid exception to the warrant requirement and in this case, Plaintiff has pled that no exigency existed. Therefore, no emergency existed. If the Court agrees with Defendants that Plaintiff did not plead a lack of emergency in his complaint, Plaintiff respectfully requests that this Court allow Plaintiff to amend his complaint to specifically allege lack of emergency.

medical staff apparently did not believe Plaintiff was in any immediate danger since they did not administer Narcan or other overdose reversing medication. Additionally, once Plaintiff arrived at the Hospital, he was first given a laxative and was forced to wait for a period of time to see if the laxative would work. (Doc. 30, ¶ 61). None of the incident reports attached to the complaint as exhibits provides that any person observed Plaintiff experiencing a heroin overdose. The moving Defendants for this motion also do not allege that anyone observed Plaintiff suffering from a heroin overdose. Furthermore, even if Plaintiff was suffering from a heroin overdose, that would not be an emergency that would justify the surgical procedure without Plaintiff's consent. The Hospital must have had Narcan or naloxone on hand to treat a heroin overdose. Therefore, even if Plaintiff was at risk of death because of a heroin overdose, it could have easily been treated with Narcan or naloxone, which is much less invasive than the surgical procedure and would not have required consent. Therefore, the moving Defendants' argument that consent was not necessary because Plaintiff was experiencing a medical emergency fails and its motion to dismiss should be denied.

D. Unknown Individuals

Plaintiff is permitted to name "fictitious" individuals as stand-ins for real parties that he is unable to identify until discovery. *Scheetz v. Morning Call*

*Inc.*, 130 F.R.D. 34, 36–37 (E.D. Pa. 1990) ("Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed.") (citing *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 31–32 (3d Cir.1985); *Varlack v. SWC Caribbean, Inc.,* 550 F.2d 171, 174–75 (3d Cir.1977); *Bufalino v. Michigan Bell Tel. Co.,* 404 F.2d 1023, 1028 (6th Cir.1968); *Fludd v. United States Secret Service,* 102 F.R.D. 803, 805 (D.D.C.1984); *Lowenstein v. Rooney,* 401 F.Supp. 952, 960 (E.D.N.Y.1975); *Phillip v. Sam Finley, Inc.,* 270 F.Supp. 292, 294 (E.D.Va.1967)). No prejudice can result to moving Defendants from the naming of "fictitious" individuals at this point in the litigation since judgment is not being issued against them and no findings of law or fact are being made. *Id.* In *Scheetz*, the plaintiff named "Doe" defendants or "fictitious" parties because of an inability to identify real people. *Id.* Defendants filed a motion to have the "Doe" defendants dismissed from the lawsuit but the Eastern District of Pennsylvania refused to dismiss the "fictitious" parties because "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed. *Id.* (internal citations omitted).

Plaintiff intends to install the real parties after discovery permits their identification. In this case, Plaintiff has not been able to identify by name the

doctor or any other staff at the Hospital that conducted the surgical procedure in this action. The Hospital will have to identify these individuals during discovery, which will allow Plaintiff to amend the party name to correctly identify the Unknown Hospital Staff. In the motion to dismiss, the moving Defendants claim that failing to name the Unknown Hospital Staff will prejudice their defense of this action. However, this is impossible since no judgment will issue against the Unknown Hospital Staff at this point and, more importantly, the Hospital has records that detail who performed the surgical procedure on Plaintiff. The Hospital is the only party that currently knows the identity of these individuals and therefore, can't claim prejudice because Plaintiff has yet to specifically name them.

E. Punitive Damages

In a section 1983 action, punitive damages "are available where the defendants have acted with a 'reckless or callous disregard of, or indifference to, the rights and safety of others.'" *Keenan v. City of Philadelphia*, 983 F.2d 459, 469–70 (3d Cir. 1992) (quoting *Bennis v. Gable*, 823 F.2d 723, 734 (3d Cir. 1987)). Punitive damages are also reserved for "cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." *Mitchell v. City of Philadelphia*, 344 Fed.Appx. 775, 780 (3d Cir. 2009) (quoting *Keenan*, 983

F.2d at 470). Additionally, the Third Circuit has held that punitive damages are justified when "the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so." *Best v. County of Northumberland*, 2012 WL 3562329, at *24 (M.D. Pa. Jun. 29, 2012) (quoting *Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir. 1978)).

In this case, Plaintiff alleged the following: (1) it was clearly established that the surgical procedure was an unreasonable and unconstitutional search and seizure at the time it was conducted; (2) conducting the surgical procedure violated Plaintiff's rights; (3) a reasonable person would have realized that the sedation and surgical procedure were violations of Plaintiff's rights; (4) Plaintiff was forced to undergo the surgical procedure; (5) Defendants had an unconstitutional conspiratorial agreement to conduct the surgical procedure; (6) Plaintiff was sedated without his consent and against his wishes; and (7) the surgical procedure was performed without Plaintiff's consent and against his wishes. These allegations show that Defendants' conduct in this case is much more than just a bare violation. Plaintiff is alleging that he was forced to undergo sedation and a surgical procedure against his wishes and without his consent to obtain evidence of a crime in violation of his constitutional rights. The Supreme Court stated in 1985 that

compelled surgical intrusions into a person's body to obtain evidence of a crime implicates expectations of privacy and security of great magnitude. *Winston v. Lee*, 470 U.S. 753, 759 (1985). Therefore, the conduct alleged in the complaint shocks the conscience and establishes that Defendants acted with reckless or callous disregard of Plaintiff's rights. Additionally, since the rights implicated in this case have been established for at least thirty years, Defendants knew or should have known that their conduct violated the rights of Plaintiff in this case. At the very least, Defendants acted with reckless disregard of whether they were violating Plaintiff's rights. This contention is also bolstered by the fact that Defendants proceeded to sedate and conduct a surgical procedure on Plaintiff without his consent and against his wishes. Therefore, Plaintiff has properly pled a claim for punitive damages in this case and respectfully requests that the Court deny Defendants motion to dismiss to that effect or grant Plaintiff an opportunity to file an amended complaint that cures any defects.

F. <u>Corporate Negligence</u>

A hospital has a duty to "uphold the proper standard of care owed [to] the patient, which is to ensure the patient's safety and well-being at the hospital. *Thompson v. Nason Hosp.*, 527 Pa. 330, 339 (Pa. 1991). This is a nondelegable duty. *Id.* The hospital's duties are classified as follows: "(1) a

duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality of care for patients." *Id.* at 339–40 (internal citations omitted).

In this case, Plaintiff has alleged that the Hospital is liable under prongs 2, 3 and 4. (Doc. 30, ¶¶ 185–189). Indeed, these averments allege that the Hospital by failing to employ competent physicians that would obtain a patient's consent before conducting a surgical procedure. (Doc. 30, ¶¶ 185–189). It is also alleged that the Hospital failed to oversee the physicians that practiced medicine within its walls by failing to ensure that its physicians obtained the informed consent of its patients before conducting a surgical procedure. (Doc. 30, ¶¶ 185–189). Finally, Plaintiff alleged that the Hospital failed to enforce adequate rules and policies that would ensure its physicians obtained the informed consent of patients before conducting surgical procedures on them. Therefore, Plaintiff has stated a claim for corporate liability.

Based on the foregoing, Plaintiff respectfully requests that this Honorable Court deny the motion to dismiss (Doc. 33) or in the alternative

permit Plaintiff to amend his complaint to remedy any defects.

## V. Conclusion

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in its entirety or, in the alternative, grant Plaintiff leave to file an amended complaint to cure any defects.

Respectfully Submitted,

*s/ Leonard Gryskewicz, Jr.*
Leonard Gryskewicz, Jr.
Attorney for Plaintiff
PA321467
Lampman Law
2 Public Sq.
Wilkes-Barre, PA 18701
Phone: (570) 371-3737
Fax: (570) 371-3838

## CERTIFICATION OF COUNSEL

I, Leonard Gryskewicz, Jr., counsel for Plaintiff, hereby certify, pursuant to Local Rule 7.8, that the number of words in this Brief in Opposition, is 4,794, including footnotes but excluding the table of contents and table of authorities.

Respectfully Submitted,

*s/ Leonard Gryskewicz, Jr.*
Leonard Gryskewicz, Jr.
Attorney for Plaintiff
PA321467

Lampman Law
2 Public Sq.
Wilkes-Barre, PA 18701
Phone: (570) 371-3737
Fax: (570) 371-3838